[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2000
THOMAS K. KAHN
CLERK

_____

No. 99-6195
_____

D. C. Docket No. 97-00778-CV-CB-M

VIOLA TAYLOR, as Administratrix of the Estate
of Jimmie Lee Mason, Jr., deceased,

                                        Plaintiff-Appellee,

versus

LONNIE ADAMS, JAMES CONNICK, et al.,

                                        Defendants-Appellants.

********************

_____

No. 99-6201
_____


D. C. Docket No. 97-00778-CV-CB-M


VIOLA TAYLOR, as Administratrix of the Estate
of Jimmie Lee Mason, Jr., deceased,

                                        Plaintiff-Appellee,

                        versus

CRYSTAL THREADGILL,
JACK TILLMAN, Sheriff Jack Tillman,

                                        Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Alabama
_____
**(August 11, 2000)**


Before COX and HULL, Circuit Judges, and GEORGE[*], District Judge.

COX, Circuit Judge:

_____

[*]     Honorable Lloyd D. George, U.S. District Judge for the District of Nevada, sitting by designation.

This is an appeal from the denial of summary judgment, sought on various immunity grounds, to three firemen and a jail nurse on claims arising from the death of Jimmie Lee Mason, Jr. We reverse.

Background

On a hot August day in 1995, employees of a Mobile, Alabama drugstore chased Jimmie Lee Mason, a suspected shoplifter, several blocks before finally apprehending him. They held Mason to the ground until police arrived. After the police handcuffed the sweaty and heavy-breathing Mason, a crew of three medically trained Mobile firemen – the defendants Driskell, Connick, and Adams (the "firemedics") – arrived. Each of the firemedics asked Mason if he was okay or required help and received a negative response; the firemedics then left the scene without providing treatment.

A police officer subsequently transported Mason to the Mobile County Jail in the back of a paddy wagon. After a drive of approximately eleven minutes, the paddy wagon arrived at the jail courtyard. When police opened the back door of the wagon, they found Mason unconscious, and they could not rouse him despite shaking his leg, rubbing his chest, and splashing water on his chest. They then summoned the jail's registered nurse.

3

As Nurse Threadgill walked toward the wagon, the police told her about Mason's unconsciousness and their attempts to wake him. At a distance of about three feet from Mason, Threadgill looked inside the van and promptly instructed the police to take Mason to the University of South Alabama Medical Center. The police did so without lights or sirens, and Mason died en route.[1]

Viola Taylor, administratrix of Mason's estate, sued a host of public officials involved with the incident. She alleged, in relevant part, violations of the Cruel and Unusual Punishment Clause, actionable under 42 U.S.C. § 1983, and supplemental negligence claims under Alabama law. Included in the complaint were claims against the "Sheriff of Mobile County, Alabama." (R.1-12 at 4.) Despite some ambiguity that arose at intermediate points during the litigation, counsel for Taylor conceded at oral argument that she sued the sheriff only in his official capacity; there were no personal claims against Jack Tillman, the sheriff at the time of Mason's death. In their official capacity, however, Alabama sheriffs operating jails are state officers protected

---

[1] The appellants frame their arguments as challenging only the legal conclusions the district court reached in denying these defendants immunity. They therefore urge us to "simply take, as given, the facts that the district court assumed when it denied summary judgment for . . . (purely legal) reason[s]." *Johnson v. Jones*, 515 U.S. 304, 319, 115 S. Ct. 2151, 2159 (1995). Thus, we have looked no further than the district court's opinion for these background facts as well as other facts of the case we will later discuss. *See Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996) (noting this approach as authorized in *Johnson v. Jones*). We refer to these facts as the summary-judgment facts.

4

by Eleventh Amendment immunity. *See Marsh v. Butler County, Alabama*, 212 F.3d 1318, 1321 (11th Cir. 2000). Thus, we affirm summary judgment for the Sheriff of Mobile County on Eleventh Amendment-immunity grounds. The only remaining defendants who are parties to this appeal, the three firemedics and Threadgill, seek review of the district court's denial of summary judgment in their favor on federal- and state-law immunity grounds.

Discussion

The firemedics contend that the district court erred by denying them qualified immunity with respect to the federal-law claim against them and by denying them both "Good Samaritan" and discretionary-function immunity with respect to the state-law claims, while Threadgill argues that the district court erred by denying her qualified immunity. Taylor responds simply that the district court acted correctly in denying summary judgment. The propriety of summary judgment on each of the immunity defenses is a question of law, which we review de novo. *See Sanders v. Howze*, 177 F.3d 1245, 1248 (11th Cir. 1999) (qualified immunity); *Sheth v. Webster*, 145 F.3d 1231, 1236-40 (11th Cir. 1998); *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir. 1992) (together addressing state-law immunity doctrines).[2]

---

[2]     Taylor also contends that this court lacks appellate jurisdiction over the federal claim under the collateral-order doctrine. We reject this argument as meritless.

*Qualified Immunity on the Deliberate-Indifference Claims*

We begin our review of a denial of the qualified immunity by discussing "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all,'" *Wilson v. Layne*, ___ U.S. ___, ___, 119 S. Ct. 1692, 1697 (1999) (quoting *Conn v. Gabbert*, 526 U.S. ___, ___, 119 S. Ct. 1292, 1295 (1999)), but we may ultimately decide the propriety of the denial on either of two alternative bases: first, on our answer to the question whether there is "an underlying constitutional violation," *Campbell v. Sikes*, 169 F.3d 1353, 1361 (11th Cir. 1999), or second, on our determination whether the law the public official is alleged to have violated was "clearly established" at the time of incidents giving rise to the suit, *id. See, e.g., Layne*, ___ U.S. at ___, 119 S. Ct. at 1695 (holding defendants entitled to qualified immunity despite their unconstitutional conduct because of the lack of clearly established, preexisting law governing that conduct). If either question is properly answered in the negative, then qualified immunity must be granted. *Campbell.* 169 F. 3d at 1361-62. Here, we hold that summary judgment should have been granted to both the firemedics and Threadgill because they did not violate the Constitution.

The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.[3] Stating a claim under the clause thus requires satisfying two minima (from which the case law has ultimately derived four requirements): First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation–one "denying 'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See id.* at 300, 111 S. Ct. at 2325 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel

---

[3] Mason was a pretrial detainee. As such, his Cruel and Unusual Punishment claims sound properly in the Fourteenth Amendment right to due process of law rather than in the Eighth Amendment. *See Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) (comparing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 1872 n.16 (1979) (due process violation), with *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976) (Eighth Amendment violation)). Nevertheless, his claims – that the firemedics and Threadgill inflicted cruel or unusual punishment on him through deliberate indifference to his serious medical needs – are analyzed in identical fashion regardless of whether they arise under the Due Process Clause or the Cruel and Unusual Punishment Clause. *See id.* (citing *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985)); *Belcher v. City of Foley, Alabama*, 30 F.3d 1390, 1396 (11th Cir. 1994) (also citing *Hamm*). We thus look to those cases specifying the contours of an Eighth Amendment deliberate-indifference claim to determine the elements Taylor must satisfy here.

and unusual *punishment.*  If the pain inflicted is not formally meted out *as punishment*

by the statute or the sentencing judge, some mental element must be attributed to the

inflicting officer before it can qualify." (emphasis in original)).

In the context applicable here, denial of medical care, each of these minima has

been more specifically described as encompassing two subsidiary requirements.  To

show an objectively serious deprivation, it is necessary to demonstrate, first, an

objectively "serious medical need[]," *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291, one

that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v.*

*Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994),[4] and second, that the

response made by public officials to that need was poor enough to constitute "an

unnecessary and wanton infliction of pain," and not merely accidental inadequacy,

"negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice"

actionable under state law, *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 291-92 (internal

quotation marks omitted).[5]   Similarly, to show the required subjective intent to

---

[4]    Neither side here contends that Mason did not have an objectively serious medical need.  Our analysis therefore focuses on the other criteria.

[5]    A corollary to this requirement for a great deal more than negligence is that a public official who does act reasonably in response to a serious medical need "cannot be found liable under the Cruel and Unusual Punishments Clause," *Farmer*, 511 U.S. at 845, 114 S. Ct. at 1983, "even if the harm ultimately was not averted," *id.* at 844, 114 S. Ct. at 1983.

punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists[] and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts.

*Application to the firemedics* – Taylor does not challenge the fact that at some point during their brief presence on the scene, each of the firemedics asked Mason if he needed or wanted treatment and received a negative response and that, in total, Mason was asked numerous times if he required medical attention. Instead, she seeks to focus our attention – as she focused the district court's attention – on two additional facts: first, that one of the policemen told firemedic Driskell (apparently the leader of the crew) that Mason was complaining of stomach pain, and of greater importance, that Janet Britton, a bystander who knew Mason and knew him to have a history of seizures, told the firemedics about that history and about saliva or foam around his mouth that indicated to her that he was seizing or about to seize at that very moment.

These facts do not, however, allow Taylor to show a jury punitive intent in the form of deliberate indifference. Nor do they demonstrate that a jury could find the firemedics' response objectively insufficient under *Estelle*. The firemedics did act on whatever knowledge they had of Mason's condition: they tried to check him out and administer aid. That they questioned him repeatedly regarding his desire for treatment demonstrates not deliberate indifference, but significant concern about his condition. On the summary-judgment facts, Mason simply declined treatment. And there is no indication from the summary-judgment facts that the firemedics perceived him to do so incoherently or otherwise without the ability to speak for himself.[6]

Admittedly, as Taylor also argues, the firemedics' procedures did require taking the vital signs of seizing patients and calling in paramedics. If the firemedics drew from Britton's statements the inference that Mason was having a seizure, then they failed to act in accordance with their own protocol. But this observation, even if true, misses the point twice. First, it fails to consider that Taylor must present evidence from which a jury could find that the firemedics actually drew the inference that Mason was having a seizure: the drawing of such an inference from the observations of a layperson bystander is by no means automatic, and the other facts regarding the

---

[6] The summary-judgment facts do indicate that Mason later responded incoherently when asked by one of the police officers for his social security number. But this took place after the firemedics departed.

exchange between the firemedics and Mason himself do not indicate that they drew such an inference. Second, failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence.

*Application to Threadgill* – In Taylor's view, two aspects of Threadgill's conduct indicate deliberate indifference. First, Threadgill never examined Mason at all; she simply observed him from a distance of three feet and sent the paddy wagon to the hospital.[7] Second, according to the testimony of the police officer who drove the paddy wagon, Threadgill made comments indicating that she did not view it as part of her duty to help Mason, and made those comments in such a casual manner that the officer did not perceive any necessity to hurry to the hospital. Specifically, the summary-judgment facts include a quote from the officer in which Threadgill made "comments about bringing folks in that needs [sic] to go to the hospital and this and that, it's not her duty to, I guess, treat them or whatever." (R.3-120 at 5 n.8 (quoting Depo. of Officer Harvey).) Threadgill, on the other hand, contends that her

---

[7] Taylor's expert observed that it is "'inconceivable that . . . a registered nurse . . . never touched [Mason] and . . . didn't give him first aid and did not call an ambulance after realizing that Mason was unconscious.'" (R.3-122 at 7 (quoting Depo. of Dr. Pfortmiller) (omissions in original).) Taylor's expert also testified that given the cause of Mason's death, "acute pulmonary edema, with subsequent acute respiratory failure," (R.3-122 at 6), Mason's death "could have been prevented if first aid had been administered and an ambulance had been called" at the jail, (R.3-122 at 7).

comments were merely manifestations of her desire to follow written jail policy requiring incoming unconscious detainees to be "referred immediately for emergency care." (R.3-122 at 6 (quoting Br. of Plaintiff at 10).)[8]

We begin and end our analysis by asking whether Threadgill's actions – regardless of her mental state – were so objectively inadequate that they satisfy *Estelle*'s high standard. We conclude that they were not. As Taylor's expert testified, a jury might very well find that Threadgill's course of action violated professional standards applicable to her as a registered nurse. But that observation can only serve as a starting point for analysis that requires much more than negligence or malpractice. Whatever her motivation, it is clear that Threadgill did order that some medical care be provided to Mason: She sent him to the hospital. And on the summary-judgment facts, she did so in compliance with jail policy. Our task is to determine whether a jury could find this choice – made in lieu of conducting an

---

[8]     As quoted in the summary-judgment facts, that policy was:
> Written and defined procedures requires receiving screening to be performed by health-trained or qualified health care personnel on all inmates . . . immediately upon their arrival at the jail. Persons who are unconscious, semi-conscious, bleeding, mental, unstable or otherwise urgently in need of medical attention are referred immediately for emergency care. If they are referred to a community hospital, their admission or return to the jail is predicated upon written medical clearance.

(R.3-122 at 6 (quoting Br. of Plaintiff at 10).)

12

examination at the scene and awaiting an ambulance – to be sufficiently worse than negligent.

As Taylor argues, treatment "so cursory as to amount to no treatment at all" rises to this level. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). So too does the delay of treatment for obviously serious conditions where "it is apparent that delay would detrimentally exacerbate the medical problem," the delay does seriously exacerbate the medical problem, and the delay is medically unjustified. *Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187, 1187-89 (11th Cir. 1994). These principles were, however, developed in contexts involving much longer time frames than the incident at issue here, and with those longer time frames, greater periods for reflection upon a course of action. *See Lancaster*, 116 F.3d at 1420-23 (detailing a sequence of failures leading to death over the course of a long night of incarceration); *Hill*, 40 F.3d at 1187 n.21 (collecting and describing cases). Determining where to draw the line between the constitutional and the unconstitutional in a split-second, emergency choice between two options of the sort made here is a distinct task. Taking up this task, we conclude that Threadgill's choice was not, under emergency circumstances demanding an immediate decision, "an unnecessary and wanton infliction" of physical suffering. *Estelle*, 429 U.S. at 105, 97 S. Ct. at 292 (internal quotation marks omitted). Moreover, that Threadgill made her

13

decision in compliance with written policies is significant: Even if that compliance was medically unreasonable (presumably, because the policies were themselves unreasonable or too undetailed to offer guidance in such a difficult situation), the existence of the policies and their dictates militates against concluding that Threadgill's actions were wanton. Thus, on the summary-judgment facts, we cannot conclude that Threadgill violated the Constitution.

*Discretionary-Function Immunity on the State-Law Negligence Claims*

The district court denied the firemedics discretionary-function immunity, because it thought that the immunity applies to municipal officers only if a statute so states and, as it correctly observed, there is no such statute covering firemen. The firemedics concede that they are not covered by a statutory form of the immunity, but argue that they are protected by a common-law variety. Although the case law addressing Alabama's discretionary-function-immunity doctrine is muddled, we conclude that it does, as the firemedics contend, extend to them a common-law form of discretionary-function immunity.[9]

_____

[9] Because the denial of state-law immunities presents questions regarding application of the collateral-order doctrine very similar to those raised by Taylor regarding federal qualified immunity, we question sua sponte, *see, e.g., University of South Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir.1999), the propriety of our jurisdiction over the appeal as to discretionary-function immunity, *see Sheth v. Webster*, 145 F.3d 1231, 1236-38 (1th Cir. 1998). Discretionary-function immunity arising under Alabama law is, like qualified immunity arising under federal law,

14

Confusion regarding the application of discretionary-function immunity to municipal officers in Alabama arises from significant ambiguity in the seminal case regarding whether discretionary-function immunity applies to all "public officers" as the Restatement (Second) of Torts § 895D, a provision adopted as Alabama law, contemplates, or only to state officers arguably under the cloak of the sovereign immunity provision of the Alabama Constitution. In *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989), a case in which the defendants were state employees, the court apparently viewed discretionary-function immunity as one of two forms of immunity potentially available to state officials (the other being absolute immunity) under the Alabama Constitution of 1901, Article I, § 14. Along the way, however, it also noted that Alabama has adopted, in toto, the language of § 895D of the Restatement, *see id.* at 84 (quoting Restatement (Second) of Torts § 895D (1977)) (citing *Barnes v. Dale*, 530 So. 2d 770, 783 (Ala. 1988); *DeStafney v. University of Alabama*, 413 So. 2d 391,

immunity from suit. *See Sheth*, 145 F.3d at 1237-38 (citing *Marnon v. City of Dothan*, 677 So. 2d 755, 761 (Ala. 1995); *Ex Parte City of Birmingham*, 624 So. 2d 1018, 1021 (Ala. 1993); *Phillips v. Thomas*, 555 So. 2d 81, 86 (Ala. 1989)). Therefore, the same principles of federal law governing an appeal of the denial of qualified immunity at the summary judgment stage also govern an appeal of the denial of Alabama discretionary-function immunity at the same stage. *See id.* at 1236-38. Because the firemedics appeal both the denial of discretionary-function immunity and the denial of qualified immunity from the same procedural posture and under the identical assumption regarding the validity of the district court's summary-judgment facts, we have jurisdiction to review the former just as we have jurisdiction to review the latter.

393 (Ala. 1982)). A natural reading of the case (and the reading apparently underpinning the district court's opinion) might be that it holds § 895D to be the standard by which immunity *for state officers* arising under the Alabama Constitution is to be applied in an individual case. This reading also comports with the observation made in *Sheth* regarding why it was necessary for the Alabama legislature to pass a statute expressly extending discretionary-function immunity to municipal police officers. *See Sheth*, 145 F.3d at 1236 (observing, in dicta, that Ala. Code § 6-5-338, which grants discretionary-function immunity to "peace officer[s] . . . employed . . . by . . . a county or municipality" but not to other municipal officers, was enacted in apparent recognition of the fact that "certain state police officers are entitled to absolute immunity as constitutional officers and that other state police officers are entitled to discretionary function immunity, but that county and municipal police officers arguably had no immunity").

Nevertheless, in light of subsequent decisions by Alabama courts, we must conclude that this reading is wrong. At least four times, Alabama appeals courts have held § 895D immunity applicable to municipal officers. *See Roden v. Wright*, 646 So. 2d 605, 609-11 (Ala. 1994) (holding that plaintiff suing a county commissioner was collaterally estopped from denying the commissioner's § 895D immunity because all of the issues necessary to resolving that immunity were already litigated in a federal

16

suit involving an issue of qualified immunity); *Ex parte City of Birmingham*, 624 So. 2d 1018, 1021 (Ala. 1993) (applying the immunity to various city officials); *Crowe v. City of Athens*, 733 So. 2d 447, 449, 451 (Ala. Civ. App. 1999) (applying the immunity to a city officer and observing that "[n]either party has provided authority, and we are aware of none, for the proposition that the operation of § 895D as an affirmative defense with respect to state officials differs from its operation as to municipal officials"); *Marnon v. City of Dothan*, 677 So. 2d 755, 761 (Ala. Civ. App. 1995) (applying the immunity to city commissioners). *See also Crouch v. Whatley*, 900 F. Supp. 1567, 1571-73 (M.D. Ala. 1995) (treating § 6-5-338 and common-law § 895D immunities as independent doctrines, both available to a municipal police officer); *Williams v. Crook*, 741 So. 2d 1074, 1076-78 (Ala. 1999) (denying a municipal police officer immunity under § 6-5-338, but also recognizing in dicta that "public officials, including municipal employees" have access to the immunity recognized in *Phillips*). Alabama's discretionary-function immunity doctrine thus applies to the municipal firemen in this case, and we must consider whether they have, on the summary-judgment facts, satisfied its requirements.

The firemedics are entitled to discretionary-function immunity if, on the summary-judgment facts, their acts at the scene were discretionary and Taylor has not presented evidence sufficient to create a jury question regarding whether they "acted

in bad faith, [or] with malice or willfulness." *Sheth*, 145 F.3d at 1239 (citing *Wright v. Wynn*, 682 So. 2d 1, 2 (Ala. 1996)). For the same reason we found the firemedics entitled to qualified immunity from the federal claims against them, we also conclude that Taylor could not show a jury that they acted with the mental state necessary to preclude discretionary-function immunity. Thus, we have only to ask whether their acts were discretionary where discretionary acts are defined as "'those . . . as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances.'" *Id.* (quoting *Wright*, 682 So. 2d at 2). As we noted in our qualified-immunity analysis, the summary-judgment facts indicate that department procedure for a seizing patient required taking vital signs and calling for paramedics. But in the face of Mason's having repeatedly refused treatment, no reasonable jury could conclude that the procedure provided a "hard and fast rule" for handling the situation; this was clearly an instance in which the firemedics had to exercise "judgment and choice," and they are therefore entitled to discretionary-function immunity.[10]

---

[10] Because the firemedics are entitled to discretionary-function immunity, we need not decide whether the district court erred when it decided that the firemen, because they were on duty, were not entitled to the "Good Samaritan" immunity conferred by Ala. Code § 6-5-339 (Michie 1993), or whether we even have jurisdiction to consider the question.

## Conclusion

For the foregoing reasons, we reverse the district court's denial of qualified immunity and discretionary-function immunity to the firemedics and denial of qualified immunity to Threadgill.[11]

REVERSED and REMANDED.[12]

---

[11] Appellant's motion for certification of unresolved state-law questions is DENIED.

[12] The City of Mobile remains a defendant in this case but is not a party to this appeal.