[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 28, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10286
Non-Argument Calendar

_____

D. C. Docket No. 02-00573-CV-BH-B

JAMES E. WILLIAMS, JR.,

Plaintiff-Appellant,

versus

SHERIFF PRINCE ARNOLD,
GLORIA KENNEDY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(November 28, 2006)**

Before BLACK, CARNES  and BARKETT, Circuit Judges.

PER CURIAM:

James E. Williams, Jr. is a former Alabama state prisoner proceeding pro se. He sued Prince Arnold, the Sheriff of Wilcox County, Alabama and Gloria Kennedy, the county's chief jailer, under 42 U.S.C. § 1983, contending that they violated his Eight Amendment rights by showing intentional, malicious, and deliberate indifference to his medical needs. The district court denied his motions for appointment of counsel and summary judgment, and it granted summary judgment for Arnold and Kennedy. Williams is appealing the judgement against him that resulted from those rulings. We affirm.

Williams suffers from Addison's disease.[1] People with Addison's disease must take medications daily or risk serious health problems, including death. According to the physician who originally diagnosed Williams' condition, Williams has taken medication to treat Addison's disease since 1980. The required medication consists of two prescription drugs, Florinef and Prednisone.

Williams entered Wilcox County Jail in February 1999. At that time, he informed Arnold and Kennedy of his daily medical needs. In addition to the two drugs taken for Addison's disease, Williams also took prescription medicine for

---

[1] Because this is a de novo review of the district court's grant of summary judgment against him, the "acts in this opinion construed in the light most favorable to Williams, and we draw all reasonable inferences in his favor. See Farrow v. West, 320 F.3d 1235, 1239 n.2 (11th Cir. 2003).

hypertension and for his allergies. Nevertheless, the jailers did not always retrieve Williams' prescriptions from the local pharmacy before he ran out of medicine. He was in the jail for nearly 530 days. Delays in refilling his prescriptions caused Williams to go without his medication on 49 of those days. Most of the delays lasted just a one or two days, but he once suffered both a four-day period and a seven-day period with no medication.

Williams says that he suffered greatly because of the delays in receiving his medications. He asserts that on some of the days that he did not receive his medicine he experienced one or more of the following symptoms: fear for his life, general weakness and pain, insomnia, fatigue, vomiting, dehydration, darkening of the skin, stomach illnesses, and other psychological disturbances. But Williams also kept a journal of his pain. In it his only specific references were to a neck ache, insomnia, and nausea, although he did make general references to feeling "very bad," "rough," "like he had the flu," and "weak."

In his journal, Williams also indicated that he had regular contact with Kennedy and with the jailers in charge of his medicine. He says that he personally informed Kennedy of the delays "on numerous occasions." The jailers told him that they were attempting to get his medication and that the delays usually resulted from the staff's failure to have the medication filled by, or picked up from, the

3

pharmacy on time. When Williams requested to see a physician because of symptoms related to his lack of medication, the jailers followed the jail's procedures: if Williams said his situation was an emergency, he was taken immediately to see a doctor; if he said his situation was not an emergency, he saw the doctor during the next available appointment. In no instance was Williams denied access to a doctor.

The jail's records reflect three instances when Williams requested to see a doctor regarding his lack of medication. For two of instances, Williams was taken to the doctor the day he made the request. For the third, Williams saw the doctor five days after his request. The same doctor examined Williams on all three occasions, and his medical records reveal two instances when, in response to not receiving his medication, Williams complained of neck pain, and one instance when he complained of flu-like symptoms. The doctor's records do not reveal other complaints from Williams arising from his lack of medication.

Williams sued Arnold and Kennedy under § 1983 for violating his Eighth Amendment rights. According to Williams, they knew that delays in receiving his medicine could threaten his life, but they nonetheless deprived him of necessary care with intentional, malicious, and deliberate indifference by tolerating repeated delays in procuring his medicine. He also moved for the appointment of counsel.

4

A magistrate judge denied that motion and recommended granting summary judgment in favor of Arnold and Kennedy and denying summary judgment for Williams.  The district court adopted that recommendation, and denied another motion from Williams for the appointment of counsel. Williams then appealed the district court's decisions.

We review the district court's denial of a motion to appoint counsel only for an abuse of discretion.  Steele v. Shah, 87 F.3d 1266, 1270–71 (11th Cir. 1996).  Under 28 U.S.C. § 1915(e)(1), a district court may appoint counsel to an indigent plaintiff, but the court has broad discretion in deciding whether to do so.  Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999).  "Appointment of counsel in civil cases is . . . a privilege justified only by exceptional circumstances, such as the presence of facts and legal issues [which] are so novel or complex as to require the assistance of a trained practitioner."  Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993) (quotations and citation omitted) (brackets in original).  "The key is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court.  Where the facts and issues are simple, he or she usually will not need such help."  Id.

In analyzing whether the exceptional circumstances that justify the appointment of counsel are present, we consider (1) the type and complexity of the

case; (2) whether the pro se litigant is capable of adequately presenting his case; (3) whether he is in a position to adequately investigate the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990).

Williams asserts that, because of the rarity of Addison's disease, the district court could not appreciate the novel and complex allegations raised in his complaint. He argues that an attorney's assistance would have allowed him to gather expert testimony regarding the nature of Addison's disease. He further states that because he did not have this assistance the district court was able to "use the lack of expert testimony as a shield to protect its denial of a motion for counsel and then as a sword to slay the indigent plaintiff's case."[2]

Williams misunderstands the type of factual complexity that merits the appointment of an attorney. Although Addison's disease is rare and difficult to understand, the factual issues in this case were established. Williams submitted a physician's letter stating that a delay in administering his medication could cause serious negative health effects and possibly death. The only issue is whether the

---

[2] To the extent that Williams challenges the district court's failure to grant his request for appointment of a medical expert, this issue is not properly before us because Williams did not request appointment of an expert witness in the district court.

delays in his receiving his medication violated § 1983. Moreover, Williams has demonstrated his ability to adequately present his own. See Fowler, 899 F.2d at 1096. Because this case does not present novel or complex issues of fact or law, we find no abuse of discretion in the denial of Williams' motions for the appointment of counsel.

We review de novo the district court's grant of summary judgment, asking whether, when viewing the record in the light most favorable to the nonmoving party, a genuine issue of material fact exists as to whether the defendants' actions constituted deliberate indifference to Williams' serious medical needs. Steele, 87 F.3d at 1269. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S. Ct. 2505, 2511 (1986). "Medical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).

The Eight Amendment prohibits "cruel and unusual punishments." It neither mandates comfortable prisons, nor tolerates inhumane ones. Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). After a person is incarcerated, "only the 'unnecessary and wanton infliction of pain' . . . constitutes

cruel and unusual punishment forbidden by the Eight Amendment." Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003) (quoting Ingraham v. Wright, 430 U.S. 651, 670, 97 S. Ct. 1401 (1977)). A prison official engages in the "unnecessary and wanton infliction of pain" by showing "deliberate indifference" to an inmate's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). Deliberate indifference does not exist where the prison official inadvertently or negligently fails to provide adequate medical care. Id. at 105–06, 97 S. Ct. 285.

The standard that Williams must meet to show that Arnold and Kennedy acted deliberately indifferent to his serious medical needs has two components, one objective and one subjective. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). To satisfy the objective component, Williams must present evidence of an objectively serious medical need. Id. That need must be serious enough that a failure to address it constitutes a "cruel and unusual deprivation" that disallows the "minimal civilized measure of life's necessities." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991)). To satisfy the subjective component he must offer evidence that Arnold and Kennedy were deliberately indifferent to his objectively serious medical need. Id. Deliberate indifference is conduct that is more deliberate than accidental inadequacy, negligence, or even

8

malpractice.  Id. at 1257.

Williams contends that summary judgment for Arnold and Kennedy was improper, and that the district court should have granted summary judgment in his favor because the undisputed evidence shows that the defendants knew that he: (1) had Addison's disease; (2) suffered because he sometimes went without his medication; and (3) visited a doctor at least three times because he did not timely receive the medication.

Regarding the objective component of the Eighth Amendment test, Williams contends that there is no genuine issue of material fact concerning his serious medical need because neither party disputes that Addison's disease can be fatal if not properly treated.  The magistrate, however, concluded that the existence of a serious medical need was not established merely by Williams' diagnosis with Addison's disease.  Instead, the magistrate determined that the relevant inquiry was whether Williams' condition during the time he went without medication constituted a serious medical need.

There is no need for us to determine the correctness that determination because, even if Williams met the objective component, he has failed to create a genuine issue of material fact about the subjective component.  To establish this component, Williams must essentially show that Arnold and Kennedy intended to

9

punish him by depriving him of his medicine. See Taylor, 221 F.3d at 1257 ([T]here must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish."); see also Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981) ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify [as an Eight Amendment violation]."). However, Williams can establish the subjective component by showing that Arnold and Kennedy acted with "deliberate indifference" to his serious medical need. Id. (quoting Estelle, 429 U.S. at 105, 97 S. Ct. at 291). He can show deliberate indifference by demonstrating that (1) Arnold and Kennedy subjectively knew that a "substantial risk of harm exist[ed]," (2) they disregarded that substantial risk, and (3) their conduct in disregarding that risk was more deliberate than mere negligence. McElligott, 182 F.3d 1148, 1255 (11th Cir. 1999). "[K]nowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994) (quotations and citation omitted), abrogated on other grounds, Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002). "The tolerable length of delay in providing medical attention depends on the nature of the medical need and the

reason for the delay." Harris v. Coweta County, 21 F.3d 388, 393–94 (11th Cir. 1994).

The magistrate did not err in concluding that, even assuming Williams had demonstrated a serious medical need, his claim failed because he offered no evidence that either Arnold or Kennedy acted with deliberate indifference. See Hill, 40 F.3d at 1186. He was in the jail from February 1999 to August 2000. His medical regimen consisted of multiple prescription medications that he took several times a day. His evidence shows that he sometimes missed a day or more of his medicine because the jail's staff failed to refill his prescriptions before he ran out of medicine. He had all of his medication more that 92 percent of the time he was in Wilcox County jail. The longest time he went without his medication was one seven-day period, and even then he received a physician's care and suffered no lasting physical harm from the delay. See Hill, 40 F.3d at 1158 ("Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious."). Every time he asked to see a doctor, he was taken to see one. One the two occasions when Williams said it was an emergency, he was immediately taken to see a doctor.

Admittedly, the cause of the delays was failure by the jail's staff to retrieve his refills before Williams ran out of medicine. But, the jail's overall effort in

keeping up with William's four prescriptions and its response to his request to see a doctor when problems arose was reasonable. "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). Furthermore, Williams offers no evidence indicating that the delays can be attributed to Arnold' or Kennedy's deliberate indifference. There is no substantial evidence that they ordered, condoned, or willfully ignored the delays. See Taylor, 221 F.3d at 1257. At best, the delays suggest that the jail's methods of procuring medicine from the local pharmacy need adjusting. Even so, this would be negligence, not the deliberate indifference forbidden by the Eighth Amendment. Id. at 1257–58. Furthermore, the prompt response to Williams' requests to see a doctor negates any inference that Arnold or Kennedy were deliberately indifferent to his health.

Because the district court properly granted the defendants' motion for summary judgment, it follows that it correctly denied Williams' motion for summary judgment, and we need not address or the defendants' affirmative defenses.

**AFFIRMED.**