[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14548
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-01381-ELR

DONALD JAMES,
individually as administrator of the estate of
Jennifer James,

                                            Plaintiff - Appellant,

versus

BARTOW COUNTY, GEORGIA, et. al.,

                                            Defendants,

NICOLE AGEE,
CORRECTHEALTH BARTOW, L.L.C.,

                                            Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 23, 2020)

Before MARTIN, NEWSOM and MARCUS, Circuit Judges.

PER CURIAM:

Donald James, individually and as administrator for the estate of his wife, Jennifer James,[1] appeals two decisions of the district court in the § 1983 action he brought arising out of a fatal drug overdose his wife Jennifer suffered while she was incarcerated: (1) the district court's order granting a motion to dismiss to defendants Clark Millsap, Gary Dover, Derek Cochran, Tina Pallone, Dallas Watson, "Causey," Joy Stanley, Andrea Crutchfield, Ariel Hendricks, and Jeremy Gazerro (collectively, the "County Defendants"); and (2) the district court's order granting summary judgment to defendants CorrectHealth Bartow, LLC and Nicole Agee (collectively, the "Medical Defendants").  He argues that he adequately alleged, and that the record reveals genuine disputes of material fact as to, defendants' deliberate indifference to his wife's serious medical needs during the drug overdose that resulted in her death, in violation of the Eighth Amendment.  After thorough review, we affirm.

We review both the grant of the motion to dismiss and the grant of summary judgment de novo.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010) (motion to dismiss); Baker v. Birmingham Bd. Of Educ., 531 F.3d 1336, 1337 (11th Cir. 2008) (summary judgment).  A motion to dismiss is due to be granted

---

[1] The decedent's first name appears variously in the record and the captions of this case as "Jennifer" and "Jenifer."  For consistency's sake, we will use "Jennifer."

where, taking the factual allegations in the complaint as true, the plaintiff has not stated a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A party is entitled to summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a factual dispute is genuine, we consider whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016) (quotations omitted).

The relevant background -- based on the allegations in the complaint and the undisputed record on summary judgment -- are these. On April 20, 2014, Jennifer James, an inmate at Bartow County Jail, apparently consumed a large amount of methamphetamine that another inmate had smuggled into the facility. After she had been ill for several hours, she had a seizure, and other inmates pushed the panic button in her cell to call for help. The inmates told the officer on the other end of the line that Jennifer "wasn't breathing," and the officer responded to the effect that "medical basically will get there when they get there."

Shortly thereafter, nurse Nicole Agee arrived with a coterie of officers, now the County Defendants, and began attempting to treat Jennifer. The written records

3

do not tell us precisely how much time elapsed between the panic button call and Agee's arrival. Inmate witnesses testified that it took "five to ten minutes," and "I want to say it feel like it took at least 15 minutes," respectively. Nurse Agee swore she received the call at about 11:36 p.m., according to her watch, and must have arrived at Jennifer's cell before 911 records show an ambulance was called at 11:42 p.m. Agee testified in an affidavit that Jennifer resisted her help and denied having taken drugs, but was cool to the touch, had shallow breathing, and developed cyanosis. Agee first called for a stretcher from the medical unit in the prison, and while waiting for the stretcher, she directed an officer to call 911 for an ambulance.

After the 911 call was received at 11:42 p.m., an ambulance was en route at 11:44 p.m., and it arrived at 11:48 p.m. Jennifer was admitted to the ICU at Cartersville Hospital. She died several days later when her family removed her from life support. She tested positive for a lethal dose of methamphetamine. Nurse Agee testified that there is no reversal agent for a lethal dose of methamphetamine.

Donald James filed this action in the United States District Court for the Northern District of Georgia against the County Defendants, the Medical Defendants, and the County itself, asserting five claims. Three were violations of 42 U.S.C. § 1983, for failure to protect, deprivation of the right of due process, and inadequate medical care. Two were state law claims. The district court granted the County Defendants' motion to dismiss and granted summary judgment to the

Medical Defendants.  The parties stipulated to the dismissal of any claims against the County.  James's brief before us only appeals from the district court's holding that the County and Medical Defendants were not deliberately indifferent to Jennifer's medical emergency.  The brief does not make any arguments concerning the plaintiff's claims based on a failure to protect, due process, or state law.  As a result, they have been abandoned for purposes of this appeal.  See Sapuppo v. Allstate v. Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) (collecting cases).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  This prohibition is violated where prison officials act or fail to act with "deliberate indifference to serious medical needs" of prisoners.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  To establish deliberate indifference, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).  Delayed medical treatment can rise to the level of deliberate indifference when: (1) "it is apparent that delay would detrimentally exacerbate the medical problem"; (2) the delay actually seriously exacerbates the problem; and (3) "the delay is medically unjustified."  Taylor v. Adams, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (quotations omitted).  A prisoner must provide "verif[ied] medical evidence . . . to establish the detrimental effect of delay in medical treatment."  Hill

v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002).

As for the County Defendants, James makes two sets of allegations.  Each is inadequate to state a claim for deliberate indifference.  First, he alleges that the defendants had intimidated the other inmates in the cell with Jennifer from pushing the panic button earlier than they did by having generally, over a long period of time, threatened retaliation "if you press [the] button for bullshit," or used it in a non-life or death situation.  But this was a life or death situation, as the plaintiff acknowledged by alleging that Jennifer was "obviously dying," and upon realizing this, the inmates pushed the panic button for help.  Thus, even assuming the threats were made, they did not prevent the inmates from pushing the panic button in the situation at issue here, and the plaintiff has not alleged how much sooner the inmates could or should have pressed the panic button, nor has he alleged that inmates were categorically discouraged from using the panic button in all circumstances.

Second, James alleges that when the officers arrived at the scene, "they were more interested in questioning the inmates about contraband than getting Jennifer James to medical."  But according to James's complaint, Nurse Agee was already present and attempting to treat Jennifer when this occurred.  By that time, Jennifer was already receiving medical help, and the officers were entitled, consistent with the Eighth Amendment, to defer to Agee's professional judgments about Jennifer's

6

condition.  See Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1050 (11th Cir. 2014) (holding that prison officials were entitled to defer to the professional judgments of mental health experts).  Therefore, James has failed to plausibly allege that the County Defendants were deliberately indifferent to her serious medical needs for purposes of the Eighth Amendment, and the district court did not err in dismissing the complaint against them as failing to state a claim.

As for the claims against Nurse Agee, the record reveals no genuine disputes of material fact concerning whether Agee's treatment of Jennifer violated the Eighth Amendment, and the district court was correct to grant summary judgment to her. Agee testified that she received the call about Jennifer's emergency at 11:36 p.m.  If true, the time she could have taken in reaching Jennifer's cell could have been no more than six minutes, when the 911 records show an ambulance was called.  The only evidence James offers in rebuttal is the testimony of one witness who said that it took "five to ten minutes" and another who said "I want to say it feel like it took at least 15 minutes" for Nurse Agee to arrive.  But the first witness's testimony is consistent with Agee's account, and the second witness admitted in her deposition that she was under stress at the time and the delay may have felt longer than it was. In any event, even assuming that it did take fifteen minutes for Nurse Agee to arrive, we've said before that a fifteen-minute delay is not actionable under the Eighth Amendment.  See Dang ex rel. Dang v. Sheriff, Seminole Cty., Fla., 871 F.3d 1272,

7

1283 (11th Cir. 2017) (holding that there was no constitutional violation where "there was about a 15-minute delay" in medical treatment).

Moreover, the record reveals no genuine disputes of material fact as to the quality of Nurse Agee's treatment. She testified that upon her arrival, she began attempting to treat Jennifer immediately, and this fact is not controverted by the testimony of the witnesses. She then directed an officer to call for an ambulance, and the 911 report clearly shows that the ambulance was called at 11:42 p.m. and had arrived by 11:48 p.m. In addition, Nurse Agee testified that there is no reversal agent for methamphetamine toxicity. On this undisputed record, we can't say that a delay in treatment caused Jennifer's death under Taylor. This is especially true in the absence of any evidence, much less "verif[ied] medical evidence," Hill, 40 F.3d at 1188, that a quicker response time could have saved her. Thus, the district court did not err in granting summary judgment to defendant Nicole Agee.

One defendant remains: CorrectHealth Bartow, LLC, the medical provider in the jail. In his brief before us, James makes no arguments specific to CorrectHealth and has abandoned the claims against it. Even if they were not abandoned, James could only show a constitutional violation on the part of CorrectHealth under the standard applicable to constitutional violations committed by municipalities. See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997) ("When a private entity . . . contracts with a county to provide medical services to inmates . . . it becomes the

8

functional equivalent of the municipality."). Municipalities can be liable for the constitutional violations of their employees only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of N.Y. City, 436 U.S. 658, 690 (1978). Plaintiff can point to no evidence in the record, nor did he even allege, that CorrectHealth's policies include deliberately indifferent delays in providing healthcare. Accordingly, the district court did not err in granting summary judgment to CorrectHealth.

**AFFIRMED.**