[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13446

Non-Argument Calendar

_____

MARK ANDREW HILDERBRAND,

Plaintiff-Appellant,

*versus*

GEORGIA DEPARTMENT OF CORRECTIONS, et al.,

Plaintiffs,

MRS. SHARON LEWIS,
(GDC) Medical Director, in their
individual capacities,
MRS. SHARON BROWN,
(GDC/GSP) Infectious Disease Specialist,
in their individual capacites,

2                    Opinion of the Court                    22-13446

MRS. EDWARDS,
(GDC/GSP) Deputy Warden of Care and
Treatment, in their individual capacities,
MRS. RILEY,
(GDC/GSP) PA, in their individual capacities,
MRS. JONES,
WARDEN, GEORGIA STATE PRISON, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 6:19-cv-00072-JRH-BWC

_____

Before WILLIAM PRYOR, Chief Judge, and BRASHER and ABUDU, Circuit Judges.

PER CURIAM:

Mark Hilderbrand, a Georgia prisoner, appeals *pro se* the partial dismissal and partial summary judgment against his second amended complaint alleging that prison officials and medical providers and Dr. Marcus Ochippinti were deliberately indifferent to his medical condition of latent tuberculosis. 42 U.S.C. § 1983. Hilderbrand alleged that after he was diagnosed in 2010, he was prescribed medication to treat the latent tuberculosis but received

only part of the regimen and was denied the remainder without explanation, and his later attempts to receive the full regimen were unsuccessful. After the parties filed cross-motions for summary judgment, the district court granted summary judgment in favor of the prison officials and providers. The district court ruled that the evidence established that Hilderbrand's treatment plan, consisting of 76 bi-weekly doses of Isoniazid, an antibiotic, was stopped after about 19 doses because he self-reported taking the medication irregularly, his liver function was impacted, he had been evaluated annually by a nurse for signs of active tuberculosis since 2010, and he had a low risk of developing active tuberculosis and lacked any symptoms of active tuberculosis. The district court also dismissed his claim against the Estate of Dr. Ochippinti without prejudice for lack of service. Fed. R. Civ. P. 4(m). We affirm.

We review *de novo* a summary judgment. *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We also review the dismissal without prejudice of a complaint for failure to timely serve a defendant, Fed. R. Civ. P. 4(m), for abuse of discretion. *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1280 (11th Cir. 2007).

Hilderbrand argues that the district court erred in ruling that he did not challenge the prison officials' alleged actions of exposing him to tuberculosis over a decade ago. But Hilderbrand does not challenge the alternative ruling that any claim regarding his initial

exposure is untimely. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect."). He has forfeited any challenge to that alternative ruling.

Hilderbrand argues that the prison officials and medical providers were deliberately indifferent by failing to provide him with a "full series of antituberculosis medication to preserve his life." We disagree.

The Eighth Amendment forbids cruel and unusual punishment, including deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Hilderbrand had to prove that the prison officials and providers knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and requires "more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 835.

The record does not support the conclusion that the prison officials and providers were deliberately indifferent. Hilderbrand alleged that the prison officials and medical providers refused to treat his latent tuberculosis properly, but the evidence established that he received adequate medical attention for his condition. After he was diagnosed with latent tuberculosis in 2010, he was prescribed a nine-month regimen of Isoniazid consisting of 76

bi-weekly doses, but a few months later, the infection control nurse monitoring his condition noted that he reported taking only 13 doses. Based on his noncompliance and having a clear chest x-ray with no symptoms of active tuberculosis, a physician stopped the regimen. A month later, a physician restarted the Isoniazid treatment at Hilderbrand's request, but after the infection control nurse again "stressed med compliance" because he reported taking only 19 doses, the medication was stopped due to noncompliance. Hilderbrand continued to meet with the nurse for screenings and chest x-rays, all of which were normal. In 2011, after he was prescribed Isoniazid a third time, a physician stopped the regimen after the nurse discovered that his liver enzymes, which measured his liver function and can become dangerously high due to Isoniazid, were elevated. Hilderbrand then was referred to the Infectious Disease Clinic at Augusta State Medical Prison, where Millie Reeves, the statewide tuberculosis coordinator, evaluated him and recorded that he had missed 15 doses of Isoniazid but "could offer no explanation for his non-compliance." After another chest x-ray revealed no active tuberculosis, Reeves recommended discontinuing Isoniazid due to his "history of non-compliance, his elevated liver function tests, the fact that [he] did not have the symptoms indicating active TB, and the small chance that [he] would actually develop TB without [Isoniazid] or Rifampin," another antibiotic used to treat tuberculosis that could cause liver damage.

In December 2011, after a nurse reported that Hilderbrand was exposed to Isoniazid-resistant tuberculosis, a physician prescribed him a four-month regimen of Rifampin, which was later

discontinued. Although the record is not clear why Hilderbrand did not complete the Rifampin regimen, the infection control nurse continued to evaluate him annually over the next seven years, and none of his health screenings revealed symptoms of active tuberculosis. In February 2020, after Hilderbrand told medical staff that he had been exposed to Isoniazid-resistant tuberculosis and presented with symptoms, he returned to the medical prison, and Reeves closely monitored and tested him for active tuberculosis for over a week. Based on his normal chest x-rays, no symptoms of active tuberculosis, and three sputum smears that all tested negative for tuberculosis, Reeves concluded that he did not have active tuberculosis. Reeves later attested that she could "state to an extremely high degree of medical certainty that (1) Hilderbrand has never developed active [tuberculosis] and (2) Hilderbrand has not developed any medical problems as a result of him being exposed to [tuberculosis] and not completing a full round of either [Isoniazid] or Rifampin therapy." Reeves attested that based on Hilderbrand's history of noncompliance, history of elevated liver enzymes and the risk that tuberculosis treatment poses to his liver, and the small chance that he will develop active tuberculosis, she "would not recommend that [he] undergo any additional [Isoniazid] or Rifampin therapy for his Latent [tuberculosis]."

In the light of this undisputed medical evidence, Hilderbrand cannot establish that his medical condition was treated with deliberate indifference. Hilderbrand received almost two dozen medical evaluations and five chest x-rays since his diagnosis, including annual evaluations by the infection control nurse, and he does

not dispute that he never developed active tuberculosis. Hilderbrand instead argues that the decision to withhold treatment until he develops active tuberculosis amounts to deliberate indifference, but we cannot agree. The medical record reveals that Reeves made a medical judgment that attempting a fifth round of treatment using either Isoniazid or Rifampin was not worth the risk of Hilderbrand being noncompliant again or his liver function suffering from the antibiotics, especially when the chance of him developing active tuberculosis was small. Although Hilderbrand denies being noncompliant, he fails to offer any explanation for why he self-reported missing so many doses after being advised of the importance of complying with the antibiotic regimen, and he does not dispute that his liver function was one reason for not continuing treatment. And allegedly failing to follow guidelines issued by the Center for Disease Control and the prison, without more, does not establish deliberate indifference. *See Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."). Hilderbrand also fails to explain the significance of two alleged factual errors in the report and recommendation regarding whether his August 2010 chest x-ray was "clear" and whether he was exposed to tuberculosis twice, as the magistrate judge stated, or only once, as Hilderbrand asserts.

The district court also did not err in dismissing Hilderbrand's claim against the Estate of Dr. Ochippinti for insufficient service of process. Fed. R. Civ. P. 4(m). Although the United States Marshal timely served an individual named "Connie Ochippinti,"

the prison officials' counsel explained to the district court during a conference call that Dr. Ochippinti and Connie divorced over 20 years ago, and there was no evidence that she could receive service for the estate. Moreover, Hilderbrand waived the right to challenge this ruling by failing to object to the magistrate judge's recommendation of dismissal after being warned of the consequence of failing to do so. *See* 11th Cir. R. 3-1; *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1192 (11th Cir. 2020).

We **AFFIRM** the partial dismissal and partial summary judgment against Hilderbrand's complaint.