[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  12-13387
_____

D.C. Docket No. 5:11-cv-00209-RS-CJK


JEFFREY KUHNE,

Plaintiff-Appellant,

versus


FLORIDA DEPARTMENT OF CORRECTIONS,
LYSETTE LAGARES, M.D., in her individual capacity,
OLIVIA WILLIAMS, R.N., in her individual capacity,
PAULA BRYSON, L.P.N., in her individual capacity,
HAROLD PARKER, A.R.N.P., in his individual capacity,
OFFICER SUSAN MCINTOSH, in her individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 10, 2014)

Before PRYOR and JORDAN, Circuit Judges, and PRO,[*] District Judge.

JORDAN, Circuit Judge:

Samuel Goldwyn, the legendary movie mogul, reportedly said that a "verbal contract isn't worth the paper it is written on."[1]  The same, we conclude, goes for a refusal of medical care form that, if the testimony of the plaintiff is to be believed, was materially altered after he signed it.   And because the validity of that document is in question, it could not have served as the basis for the entry of summary judgment in favor of the defendants on the plaintiff's Eighth Amendment claim under 42 U.S.C. § 1983.

## I

Jeffrey Kuhne was incarcerated by the Florida Department of Corrections for a probation violation. At an initial intake screening in June of 2008, his vision was 20/40 in his right eye and 20/30 in his left eye. *See* D.E. 62-1 at 5.  Shortly after being transferred to Jackson Correctional Institution, Mr. Kuhne—who was then in his mid-40s—suffered a dramatic loss of vision.  By mid-September of 2008,  his vision had deteriorated to 20/70 in his right eye and 20/50 in his left eye.

---

[*] Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

[1] ELIZABETH FROST-KNAPPMAN & DAVID SHRAGER, A CONCISE ENCYCLOPEDIA OF LEGAL QUOTATIONS 65 (Barnes & Noble ed. 2003).   According to one author, what Mr. Goldwyn actually said, in praise of a colleague, was that "[h]is verbal contract was worth more than the paper it's written on."   Mr. Goldwyn nevertheless was reportedly pleased about the misattribution. *See* PAUL BOLLER, THEY NEVER SAID IT 42 (1990).

*See* D.E. 63-2 at 9.

On October 21, 2008, Dr. Paul Harman, an optometrist, diagnosed Mr. Kuhne as having proliferative diabetic retinopathy, a progressive condition that can lead to permanent blindness if left untreated.  He recommended that Mr. Kuhne be "refer[ed]  to [a] retinal specialist for eval[uation] ASAP."  *See* D.E. 62-5 at 2.  Dr. Lysette Lagares, Jackson's chief health officer, received Dr. Harman's report the next day, and the Department scheduled Mr. Kuhne to receive "urgent" follow-up care from a retinal specialist on November 18, 2008.  *See* D.E. 62-4 at 2.[2]  As it turns out, Mr. Kuhne never visited a retinal specialist during his remaining five months at Jackson, and when he was released from custody in March of 2009, he was permanently blind in his left eye.

Mr. Kuhne ultimately filed suit under § 1983, asserting an Eighth Amendment claim (as well as a supplemental state law negligence claim) against the Florida Department of Corrections and the officials whom he alleged had acted with deliberate indifference by failing to provide him care for his retinopathy. Following discovery, the district court granted summary judgment in favor of the defendants on the Eighth Amendment claim.  Although it was undisputed that Mr.

---

[2] According to Mr. Kuhne's medical expert, the consultation with the retinal specialist should have taken place within three to seven days of the examination by Dr. Harman. *See* D.E. 67-1 at 13-14. The form authorizing the evaluation by a retinal specialist, which was signed by Mr. Kuhne on October 23, 2008, indicates that the November 18 appointment was made by someone in utilization management on October 29. *See* D.E. 62-4 at 2; Kuhne Affidavit, D.E. 63-11 at ¶ 5. As explained later, the fact that the appointment was made on October 29 is potentially significant.

Kuhne's retinopathy was "an objectively serious medical condition," the district court ruled that Mr. Kuhne had voluntarily, and with informed consent, signed a form on October 28, 2008, refusing the consultation with the retinal specialist. *See* D.E. 72 at 3-4, 8-9. As the district court put it, Mr. Kuhne could "not be forced to undergo medical treatment that he does not want, but 'he cannot refuse medical treatment, and then claim he was denied medical care.'" *Id.* at 8 (quoting *Morrison v. Buss*, 2011 WL 6151590, *4 (N.D. Fla. 2011)). The district court declined to exercise supplemental jurisdiction over the state law negligence claim, and dismissed that claim without prejudice. *See id.* at 11-12.

Mr. Kuhne appeals the district court's grant of summary judgment, while the defendants cross appeal the district court's order denying sanctions. After a review of the record, and with the benefit of oral argument, we reverse the grant of summary judgment and affirm the denial of sanctions.

## II

Our review of a summary judgment order is plenary, and we apply the same legal standards as required of the district court. *See, e.g.*, *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). Summary judgment is appropriate "if the [defendants] show[ed] that there [were] no genuine dispute[s] as to any material fact[s] and [that they were] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We assess all of the evidence and draw all reasonable factual inferences

4

in the light most favorable to Mr. Kuhne, the non-moving party. *See Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an objectively serious [medical] need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

## A

On October 28, 2008, five days after he signed the authorization for the consultation with the retinal specialist, Mr. Kuhne met with Nurses Olivia Williams and Paula Bryson at Jackson. Exactly what happened at that meeting (and what followed thereafter) is at the heart of this appeal. Because of the summary judgment posture of this case, we recount Mr. Kuhne's version of events.

According to Mr. Kuhne, he wanted to remove certain lifting and walking restrictions that had been placed on him because he "no longer needed those

5

restrictions."  Kuhne Affidavit, D.E. 63-11, at ¶ 7.[3]  Nurse Bryson handed him a pre-printed Department of Corrections form entitled "Refusal of Health Care Services Affidavit."

The version of the refusal form submitted by the defendants in support of their motion for summary judgment was signed by Mr. Kuhne, and by Nurses Williams and Bryson. It had the "Medical Services" box checked and, in the line next to that box, had the following written by hand: "Eye Consult, Restricted Activity (∞ lifting > 20 lb., Pass. [E]xcessive Walking)."  *See* D.E. 62-6 at 2.[4]

Mr. Kuhne stated in his affidavit that his encounter with Nurses Williams and Bryson lasted no more than two minutes, that no one at Jackson discussed the risks and benefits of refusing the consultation with the ophthalmologist, that he was "not given time to ask questions about his condition or his alleged decision to refuse the treatment regarding [his] eyes," and that he was not told he was refusing treatment for his eyes. *See* D.E. 63-11 at ¶¶ 7-9.  Nurse Bryson, said Mr. Kuhne, told him to sign the refusal form and get out of the office, and he did as she demanded, because a "prisoner does what he is told or else he goes to solitary confinement." *Id.*

Significantly, Mr. Kuhne, who was still able to read in October of 2008, *see*

---

[3] Although the record is not crystal-clear about the reasons for the restrictions, the medical file for Mr. Kuhne  shows that he suffered a herniated disc in the late 1990s and had several surgeries before his incarceration (lung, right knee, torn muscle).  *See* D.E. 62-1 at 5.

[4] The refusal form submitted by the defendants is attached as an appendix to this opinion.

Kuhne Deposition, D.E. 53-14 at 158, also stated in his affidavit that, at the time he signed the refusal form, he "did not see anything written [on the form] about an eye consult." He also denied having written the words "eye consult" on the refusal form. *See* D.E. 63-11 at ¶ 8. He learned only the next day that he had "apparently signed a refusal pertaining to [his] eyes." *See id.* at ¶ 9. Mr. Kuhne "adamantly den[ied] refusing an available ophthalmology consultation." *See id.* at ¶ 6.

In November and December of 2008, Mr. Kuhne put in "a number of sick calls" to get some help with his continuing eye problems. *See id.* at ¶ 11. One day, Mr. Kuhne specifically told Nurse Bryson that he needed to see a doctor about his eyes. *See id.* at ¶ 12. On another occasion, Nurse Williams told him that he could not see a doctor because he had less than six months to go on his sentence. *See id.* at ¶ 13. Officials at Jackson kept telling him that he had signed a refusal form, but he had continued to ask, without success, for medical treatment after October of 2008. *See id.*

On January 28, 2009, Mr. Kuhne filed an inmate request to the "classification" department "to help [him] receive his 85% date," explaining that he had "continually deteriorating eyesight." He wrote that he had "gone blind in left eye and half blind in right," and pleaded, "Please Help – my sight is getting worse." *See id.* at ¶ 14; D.E. 62-8 at 2. On the same day, his attorney, J. Gordon Shuler, Esq., sent a letter by facsimile to the Department of Corrections stating

that Mr. Kuhne was suffering from retinopathy and severe vision loss, that he had not received proper medical care, and that he was in "dire need of immediate medical attention." *See* D.E. 62-2 at 3. Correctional Officer Susan McIntosh responded to Mr. Kuhne's request by stating, "I don't really understand what I can help you with. . . . As far as your eyesight, this is a medical issue therefore I would be unable to assist you in that area." *See* D.E. 62-8 at 2.

Several days later, on February 3, 2009, Mr. Kuhne filed another inmate request, which he entitled a "medical grievance." He again explained that he was "blind in [his] left [eye] and half blind in [his] right eye." He also reported that his mother had spoken to an outside specialist and that his "condition c[ould] be corrected if [he] did not wait too long." He added, "I'm really worried about totally going blind," and closed by saying, "My 85% [ ] date was Jan-28-09." *See* D.E. 62-2 at 2.

Without ever seeing Mr. Kuhne, *see* D.E. 53-14 at 127, Dr. Lagares hand-wrote a response on February 4, 2009, in which she denied Mr. Kuhne's February 3 medical grievance. In her response, Dr. Lagares merely noted that Mr. Kuhne, on October 28, 2008, had signed a refusal form declining the consulation with the retinal specialist. She did not explain why, even if that were so, Mr. Kuhne could not have changed his mind or why the Department of Corrections could not then get him to an ophthalmologist. *See* D.E. 62-2 at 4.

Mr. Kuhne saw Nurse Practitioner Harold Parker on February 21, 2009. Although he noted Mr. Kuhne's retinopathy diagnosis and urgent need for medical care, Nurse Practitioner Parker did nothing to obtain eye care for Mr. Kuhne. *See* D.E. 63-11 at ¶ 18.

When he was released from Jackson in early March of 2009, Mr. Kuhne went to see Dr. Logan Brooks, a vitreoretinal specialist. Dr. Brooks was able to restore vision in Mr. Kuhne's right eye (to 20/40 vision with significant impairments in peripheral vision and depth perception). But he could not restore sight in Mr. Kuhne's left eye. *See id.* at ¶ 19. Because of his blindness, Mr. Kuhne is now completely disabled. *See id.* at ¶ 20.

## B

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1307 (11th Cir. 2009) (citation omitted). The defendants rightly do not dispute that Mr. Kuhne's proliferative diabetic retinopathy constituted a serious condition requiring medical treatment, *see* Br. for Appellees/Cross-Appellants at 18, and their own expert opined that Mr. Kuhne would not have gone blind in his left eye had he received

9

medical attention in November of 2008, *see id.* at 28-29, so the only question for us is whether—at the summary judgment stage —the refusal form signed by Mr. Kuhne on October 28, 2008, was fatal to his Eighth Amendment claim.  The answer to that question is no.

In a § 1983 action, the validity of a document which purports to limit a person's right to sue is resolved "by reference to traditional common law principles[.]" *Town of Newton v. Rumery*, 480 U.S. 386, 392, 107 S. Ct. 1187, 1191 (1987) (analyzing enforceability, under § 1983, of "release-dismissal" agreement in which arrestee agreed not to sue town or its officials if criminal charges against him were dropped). *See Penn v. City of Montgomery, Ala.,* 381 F.3d 1059, 1063 n.1 (11th Cir. 2004) (explaining *Rumery*).  And because an "agreement is a manifestation of mutual assent on the part of two or more persons," RESTATEMENT (SECOND) OF CONTRACTS § 3 (1981), it is black-letter contract law that one party to an agreement cannot, without the other party's consent, unilaterally modify the agreement once it has been executed.  *See* 17A AM. JUR. 2D *Contracts* § 500 (West database updated Nov. 2013) ("[N]o abrogation, change, modification, or substitution in a primary contract can be effected by the sole action of one of the parties to it."); 17A C.J.S. *Contracts* § 560 (West database updated Dec. 2013) ("A signed contract . . . cannot be changed without the consent or subsequent agreement of the parties.").  *See also Large v.*

10

*Mobile Tool Int'l*, 724 F.3d 766, 772 (7th Cir. 2013) ("Parties are free to abrogate, change, modify, or substitute a primary contract with their mutual assent."); *SCG Harbourwood, LLC v. Hanyan*, 93 So. 3d 1197, 1200 (Fla. Dist. Ct. App. 2012) ("The unilateral modification of a contract is unenforceable.").

On this record, there are genuine issues of material fact concerning the validity and scope of the refusal form.  Mr. Kuhne testified that he asked only for removal of the lifting and walking restrictions, which he no longer needed, when he went to see Nurses Williams and Bryson.  He also denied ever refusing the consultation with the ophthalmologist about his retinopathy.  Indeed, according to Mr. Kuhne, neither Nurse Williams nor Nurse Bryson told him anything about declining that consultation, and he never saw the words "eye consult" on the refusal form at the time he signed it (as he says he was directed to do by Nurse Bryson).  Additionally, the separate form scheduling the appointment with the ophthalmologist was dated October 29, 2008, the day after Mr. Kuhne purportedly executed the refusal form, and it may strike one as odd that someone in utilization management at Jackson made the appointment after Mr. Kuhne had supposedly said that he no longer wanted to see a retinal specialist.

Given this evidence, a reasonable jury could find that Mr. Kuhne did not refuse the consultation with the ophthalmologist on October 28, 2008, and that either Nurse Williams or Nurse Bryson (or someone else) wrote in the words "eye

11

consult" *after* Mr. Kuhne signed a blank refusal form he believed would only remove his lifting and walking restrictions.  In other words, a reasonable jury could find that Mr. Kuhne never voluntarily declined, with informed consent, the upcoming consultation with an ophthalmologist for his retinopathy.  *See, e.g.*, *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1102-03 (11th Cir. 2004) (reversing summary judgment in civil forfeiture case because there was an issue of fact as to whether homeowner had been coerced into signing consent form allowing search of his house).

Furthermore, even if Mr. Kuhne refused the consultation with the ophthalmologist by signing the refusal form on October 28, 2008, there are genuine issues of material fact as to whether Mr. Kuhne renewed his request for medical treatment on multiple occasions thereafter.  According to the affidavit he submitted, Mr. Kuhne complained in November and December of 2008 that he was going blind in his left eye but had not been to see another doctor.  *See* D.E. 63-11 at ¶¶ 10-13.

The district court's grant of summary judgment on Mr. Kuhne's Eighth Amendment claim is reversed, and the case is remanded for further proceedings consistent with our opinion.  On remand, the district court will need to evaluate the Eighth Amendment claim as to each individual defendant, viewing the evidence in the light most favorable to Mr. Kuhne.  It may also need to revisit its dismissal of

12

the state law negligence claim.

## III

We recognize, as we said in *Steele v. Shah*, 87 F.3d 1266, 1270 (11th Cir. 1996), that "the actual facts of the matter may be significantly different from" Mr. Kuhne's account and "more in keeping with" the defendants' version of events. But as the record now stands, the refusal form does not entitle the defendants to summary judgment on Mr. Kuhne's Eighth Amendment claim.

**REVERSED AND REMANDED.**

# Appendix

CK²

## FLORIDA DEPARTMENT OF CORRECTIONS
## REFUSAL OF HEALTH CARE SERVICES AFFIDAVIT

This is to certify that I am refusing the following:

☑ Medical services  Eye Consult, Restricted Activity (∅ lifting 720lb, excessive walking) Pass.

☐ Mental Health Services _____

☐ Dental Services _____

☐ Medication _____

☐ Lab/Diagnostic testing _____

☐ Other _____

I understand this refusal is against the advice of my health care providers. I acknowledge that I have been informed of the risks, consequences, and the danger to my health and possibly to my life that may result from my refusal of this procedure/treatment.

I have been given time to ask questions about my condition and about my decision to refuse the procedure/treatment that my health care provider has explained to me is medically indicated and necessary.

I voluntarily assume the risks and accept the consequences of my refusal of the procedure/treatment and I am releasing the Department of Corrections, all health care providers, the facility, and facility staff from any and all liability for ill effects that may result from my refusal of treatment.

X _____     10-28-08 _____
Signature of Patient*                                   Date

**Two Witnesses:** I, _____ am a health care staff member and I have witnessed the patient voluntarily sign this form/refuse to sign the form.

OLIVIA WILLIAMS, RN
JACKSON C.I.

_____
Signature                                                     Title of Witness

I, _____ am a staff member who is not the patient's health care provider for this procedure and I have witnessed the patient voluntarily sign this form/refuse to sign the form.

PAULA BRYSON, staff
JACKSON C.I.

_____
Signature                                                     Title of Witness

I, the below-signed physician, am aware that this patient has signed this refusal.

LYSETTE LAGARES, MD
CHIEF HEALTH OFFICER
JACKSON C.I.                                  10/30/08
_____                _____
Signature of Clinician                                   Date/Stamp

**Note: Spanish translation is on page two.**
Interpreter/translator (to be signed by the interpreter/translator if the patient required such assistance):
To the best of my knowledge the patient understood what was interpreted/translated and voluntarily signed this form/refused to sign the form.

_____                _____
Signature of Interpreter/Translator                 Title of Witness

*If the patient refuses to sign this document, but has verbally refused the above procedure, write REFUSES TO SIGN above Signature of Patient.

Inmate Name _____ -N18454 TM      06/25/2008
DC# _____
Date of Birth KUHNE, JEFFREY
Institution _____
W/M DOB 07/15/1962 (45)

This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.