[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13845
_____

D.C. Docket No. 5:11-cv-00209-RS-CJK

JEFFREY KUHNE,

Plaintiff-Appellant
Cross-Appellee,

versus

FLORIDA DEPARTMENT OF CORRECTIONS, LYSETTE LAGARES, M.D.,
in her individual capacity, OLIVIA WILLIAMS, R.N., in her individual capacity,
PAULA BRYSON, L.P.N., in her individual capacity, HAROLD PARKER,
A.R.N.P., in his individual capacity, and OFFICER SUSAN McINTOSH, in her
individual capacity,

Defendants-Appellees
Cross-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(July 2, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR and HIGGINBOTHAM,* Circuit
Judges:

_____

* Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth
Circuit, sitting by designation.

PER CURIAM:

This case comes before our court for the second time. Jeffrey Kuhne brought suit against the Florida Department of Corrections and several individual defendants, alleging that they were deliberately indifferent to his deteriorating eyesight in violation of his Eighth Amendment rights. The district court granted summary judgment to the defendants, ruling that Mr. Kuhne had declined medical treatment. We reversed, holding that the factual question of whether Mr. Kuhne had, in fact, declined treatment was disputed. On remand, the district court again entered summary judgment in favor of the defendants, in part based on its conclusion that Mr. Kuhne had declined medical treatment, a disputed fact we had previously held could not form a basis for summary judgment.

On appeal, and with the benefit of oral argument, we affirm in part, reverse in part, and remand with orders that the remaining claims be set for trial.

I.

A.

We set out the factual context for this suit in our previous opinion and summarize briefly now, with emphasis upon the timeline of relevant events.[1] Jeffrey Kuhne violated his probation and was incarcerated by the Florida

---

[1] *See Kuhne* v. *Fla. Dep't of Corr.*, 745 F.3d 1091, 1093–96 (11th Cir. 2014).

Department of Corrections from June 2008 through March 2009.[2]  He entered the state's custody with 20/40 vision in his right eye and 20/30 vision in his left.  His eyesight deteriorated quickly; by mid-September, his vision was only 20/70 in his right eye and 20/50 in his left eye.

Mr. Kuhne sought medical care, and on October 21, 2008, Dr. Paul Harman, an optometrist, found that Mr. Kuhne suffered from proliferative diabetic retinopathy, a progressive condition that can lead to permanent blindness if left untreated.  Dr. Harman recommended referral to a "retinal specialist for [an evaluation] ASAP."[3]  Dr. Lysette Lagares, chief health officer of the facility where Mr. Kuhne was being held, received Dr. Harman's report on October 22, and approved the evaluation, to which Mr. Kuhne consented on October 23.[4]  Five days later, on October 28, Mr. Kuhne met with Nurses Olivia Williams and Paula Bryson seeking the removal of lifting and walking restrictions.  At that meeting, he signed a form which recited that he was refusing the following medical services: "Eye Consult, Restrictive Activity ([no] lifting > 20 [pounds], Pass. [E]xcessive walking)."[5]  Mr. Kuhne, who could still read at the time, stated that he did not see

---

[2] ECF No. 1-1, at *1.  All record citations refer to the PDF pagination.

[3] ECF No. 62-5, at *2.

[4] *See* ECF No. 62-4, at *2.

[5] ECF No. 62-6, at *2.

3

anything on the form referring to an eye consult, and denied having refused such medical treatment. Our court held that the question of whether Mr. Kuhne had voluntarily declined an eye consultation on October 28 is disputed.[6]

Mr. Kuhne continued to "put in a number of sick calls in November and December [2008]."[7] At least one of those calls led to a medical appointment. On December 13, 2008, Mr. Kuhne was examined by Harold Parker, a nurse practitioner, who reported that Mr. Kuhne reported "recent blurry vision." In his notes, Mr. Parker wrote that "[patient] refused consult due to short EOS [stay in prison] time."[8] Mr. Parker testified in a deposition that he had told Mr. Kuhne to see a doctor, but that Mr. Kuhne had declined treatment.[9] Mr. Kuhne, by contrast, reported that he was told that he "could not see a doctor because [he] had less than six months to go on [his] sentence."[10] Mr. Parker saw Mr. Kuhne on February 21, 2009, and again did not provide treatment.[11]

---

[6] *Kuhne*, 745 F.3d at 1097.

[7] ECF No. 63-11, at *4.

[8] ECF No. 53-7, at *9.

[9] ECF No. 63-7, at *10 ("I told [Mr. Kuhne] that he needed to go [see an optometrist], suggested that he go, told him what the risk factors were if he didn't go. And at that time he told me that he would take care of it.").

[10] ECF No. 63-11, at *5.

[11] *See id.* at *6.

4

On January 28, 2009, Mr. Kuhne filed an inmate request, asking for help in "reciev[ing] [his] 85% date."[12] He also wrote about his deteriorating eyesight:

> Since June, I've been having problems with my eyes, slowly getting worse. Medical has informed me, that I didn't have enough time to see a specialist. I have gone Blind in left Eye & half blind in Right. I have a Eye doctor in Tallahassee upon release to see me to review my problem. Please Help – my sight is getting worse.[13]

Susan McIntosh, a correctional officer, replied to Mr. Kuhne's request, stating that she could not take action with regard to the 85% date, and that she "would be unable to assist" him with his eyesight, because that was a "medical issue."[14] Finally, in early February, Mr. Kuhne submitted a medical grievance, requesting eye care, which Dr. Lagares denied on February 4, 2009.[15]

Released from confinement in early March 2009, Mr. Kuhne sought treatment. Doctors were able to restore most of Mr. Kuhne's vision in his right eye. He is completely blind in his left eye.[16]

---

[12] ECF No. 62-8, at *2. The 85% date is a calculation used to determine an inmate's release date. *See* ECF No. 53-15, at *6.

[13] ECF No. 62-8, at *2.

[14] *Id.*

[15] *See* ECF No. 53-3, at *12-13.

[16] *See* ECF No. 63-11, at *8.

5

B.

Mr. Kuhne filed suit in Florida state court in June 2011, which was properly removed to federal court.  He alleged that Florida correctional authorities had been deliberately indifferent to his medical condition in contravention of his Eighth Amendment rights.[17]    After discovery, the Defendants moved for summary judgment on the basis that Mr. Kuhne had signed a refusal form declining future eye-related medical treatment.  The district court agreed, and granted summary judgment on this basis in May 2012.  We reversed, holding that Mr. Kuhne's refusal of medical treatment was a disputed material fact.  On remand, we instructed the district court to "evaluate the Eighth Amendment claim as to each individual defendant, viewing the evidence in the light most favorable to Mr. Kuhne."[18]

After remand, the Defendants moved to modify the scheduling order to allow them to "file a second motion for summary judgment addressing the claims against them in light of the Eleventh Circuit's opinion."[19]  The district court denied the motion.  It nonetheless granted the Defendants' original motion for summary

---

[17] Mr. Kuhne filed suit under 42 U.S.C. § 1983 and also asserted a supplemental state law medical malpractice claim.  *See Kuhne* v. *Fla. Dept. of Corr.*, 745 F.3d 1091, 1093 (11th Cir. 2014).

[18] *Id.* at 1097.

[19] ECF No. 142, at *4.

6

judgment on the same record and briefing that it had used the first time around.[20]

In its order, the district court examined each named defendant separately. However, it granted summary judgment to three defendants — Dr. Lagares, Ms. Williams, and Ms. Bryson — on the basis that Mr. Kuhne had signed a refusal form, the issue our court had already held was disputed for summary judgment purposes.[21]    It granted summary judgment to Mr. Parker on the basis that Mr. Kuhne had "specifically told him that he was seeing a specialist upon release," and so there was no basis for liability.[22]    Finally, the district court granted summary judgment to Ms. McIntosh, concluding that she had no duty to forward Mr. Kuhne's inmate request to prison medical authorities.[23]    The court also concluded that all the individual defendants were entitled to qualified immunity.[24]

---

[20] *See* ECF No. 148.

[21] *See, e.g.*, *id.* at \*11 ("Therefore, even if the appointment date was an undue delay, Dr. Lagares cannot be held accountable for it because within a week of scheduling, Plaintiff signed a refusal of medical treatment."); *id.* at \*13 ("Defendant Williams was also the nurse who prepared the Refusal of Health Care Services Affidavit.  As stated earlier, the evidence on the record shows that the form clearly stated he was waiving his eye consult appointment and that he could read and write."); *id.* at \*13-14 ("Plaintiff contends that Defendant Bryson handed him the refusal of health care form and told him to sign it.  The evidence is Plaintiff's word against the defendants' word.  Plaintiff claims no one discussed the ramifications of his actions of signing the refusal, although he requested it and it plainly stated he was refusing the eye consult.").

[22] *Id.* at \*14.

[23] *Id.* at \*15.

[24] *Id.* at \*15-16.

Both sides timely appeal.   Mr. Kuhne appeals the grant of summary judgment, and the Defendants appeal the district court's denial of their motion to modify the scheduling order to allow them to file a second motion for summary judgment.

## II.

## A.

As the familiar stricture of Federal Rule of Civil Procedure 56 dictates, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25]   We "review[] grants of summary judgment de novo, applying the same legal standard employed by the district court in the first instance.   When reviewing a grant of summary judgment, [we] may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied."[26]

Where, as here, a previous decision of our court has addressed the same or similar issues raised in this subsequent appeal, we must be mindful of the mandate rule.

---

[25] Fed. R. Civ. P. 56(a).

[26] *Fitzpatrick* v. *City of Atlanta*, 2 F.3d 1112, 1117 (11th Cir. 1993) (internal citation omitted).

[The] well-settled mandate rule obligat[es] district courts to adhere closely to the dictates of our opinions. This rule derives from the law of the case doctrine, and simply means that a district court is not free to deviate from the appellate court's mandate. An issue decided by an appellate court must be followed in all subsequent proceedings unless the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice.[27]

This principle applies to subsequent appellate determinations as well, at least so long as the "earlier panel has explicitly stated the basis for its holding."[28]

## B.

We begin where our previous panel decision ended: with the holding that the factual issue of whether Mr. Kuhne refused an ophthalmological consultation in October 28, 2008, and whether he subsequently renewed his request for medical treatment in November and December 2008, is disputed.[29] In its order, the district court granted summary judgment in favor of Dr. Lagares, Ms. Williams, and Ms. Bryson on the basis, in part, that Mr. Kuhne had voluntarily refused medical

---

[27] *Pelletier* v. *Zweifel*, 987 F.2d 716, 718 (11th Cir. 1993) (internal quotation marks and citations omitted).

[28] *Riley* v. *Camp*, 130 F.3d 958, 981 (11th Cir. 1997) (en banc) (Kravitch, J., concurring in part and dissenting in part).

[29] *Kuhne* v. *Fla. Dep't of Corr.*, 745 F.3d 1091, 1097 (11th Cir. 2014).

treatment.[30]  This ruling assumed as undisputed material facts that our previous opinion had already held were in dispute.  Under the mandate rule that was error.

Our task is not complete.  Because "we may affirm the district court's grant of summary judgment if any adequate ground for doing so exists,"[31] we must look at each individual defendant to determine if — setting aside the contested issue of whether Mr. Kuhne declined treatment — the record supports summary judgment. As the summary judgment record is the same as when our court first ruled, we, guided by the mandate rule, rely on the previous panel's interpretation of that record whenever possible.

## C.

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs."  To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an objectively serious [medical] need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."[32]

Relevant here, "'[d]eliberate indifference' can include 'the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally

---

[30] ECF No. 148, at *9-14.

[31] *Doe* v. *Drummond Co.*, 782 F.3d 576, 603 (11th Cir. 2015).

[32] *Kuhne*, 745 F.3d at 1094 (quoting, in first sentence, *Estelle* v. *Gamble*, 429 U.S. 97, 104 (1976), and, in second sentence, *Taylor* v. *Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).

10

exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified.'"[33]

It is undisputed that "Mr. Kuhne's proliferative diabetic retinopathy constituted a serious condition requiring medical treatment, and . . . that Mr. Kuhne would not have gone blind in his left eye had he received medical attention in November of 2008."[34]   Informed by these facts, our task is to decide whether summary judgment is proper with respect to each defendant.

### 1. *Ms. Williams and Ms. Bryson*

On October 28, 2008, Mr. Kuhne met with nurses Olivia Williams and Paula Bryson so that he could "remove certain lifting and walking restrictions that had been placed on him."[35]   During that meeting, he signed a form which stated that he was refusing an "[e]ye [c]onsult," however, as our court has already found, the evidence in the summary judgment record could support the conclusion that "Mr. Kuhne did not refuse the consultation with the ophthalmologist on October 28, 2008, and that either Nurse Williams or Nurse Bryson (or someone else) wrote in

---

[33] *Harper* v. *Lawrence Cnty., Ala.*, 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting *Taylor*, 221 F.3d at 1259-60).   Alternatively, this element can be phrased as a causation requirement.   *See Mann* v. *Taser Int'l., Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (plaintiff must prove "causation between that indifference [by defendant] and the plaintiff's injury").

[34] *Kuhne*, 745 F.3d at 1096.

[35] *Id.* at 1094.

the words "eye consult" *after* Mr. Kuhne signed a blank refusal form he believed would only remove his lifting and walking restrictions."[36] Because it is undisputed that a delay in medical treatment in October would have made a difference for Mr. Kuhne's eventual prognosis, and it is disputed whether Mr. Kuhne declined such treatment when he met with Ms. Williams and Ms. Bryson, summary judgment is inappropriate.

In response, the Defendants make two arguments. Neither succeeds. First, they argue that a reasonable jury could not believe "the assertion that [Mr. Kuhne] had to be coerced or threatened into signing a document that he wanted to sign."[37] This argument, however, fails on both the law and the facts. On the law, the relevant test is whether "it is apparent that delay would detrimentally exacerbate the medical problem," a separate issue altogether from the question of coercion.[38] And on the facts, there is evidence of pressure in the summary judgment record, at least as to whether Mr. Kuhne wanted to decline eye care (as opposed to lifting and walking restrictions, which he admits he wanted to decline):

---

[36] *Id.* at 1097.

[37] Appellees' Br. 29.

[38] *Taylor* v. *Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000). Mr. Kuhne would also have to show that "the delay does seriously exacerbate the medical problem" and that "the delay is medically unjustified," *id.* at 1259-60, neither of which are disputed in this appeal.

12

Mr. Kuhne stated in his affidavit that his encounter with Nurses Williams and Bryson lasted no more than two minutes, that no one at Jackson discussed the risks and benefits of refusing the consultation with the ophthalmologist, that he was "not given time to ask questions about his condition or his alleged decision to refuse the treatment regarding [his] eyes," and that he was not told he was refusing treatment for his eyes. Nurse Bryson, said Mr. Kuhne, told him to sign the refusal form and get out of the office, and he did as she demanded, because a "prisoner does what he is told or else he goes to solitary confinement."[39]

Second, the Defendants posit that there is no evidence that Mr. Kuhne requested medical care in November or December 2008.[40] Our court has flatly rejected this proposition, concluding that there is a material dispute over the existence and content of such requests.[41] The Defendants put forward no further evidence in favor of summary judgment, and consequently, they have not met their burden, with respect to Ms. Williams or Ms. Bryson, of "demonstrat[ing] the absence of a genuine issue of material fact."[42]

---

[39] *Kuhne*, 745 F.3d at 1094-95 (quoting ECF No. 63-11, at ¶¶ 7-9).

[40] Appellees' Br. at 30-31.

[41] *See Kuhne*, 745 F.3d at 1097 ("[T]here are genuine issues of material fact as to whether Mr. Kuhne renewed his request for medical treatment on multiple occasions thereafter. According to the affidavit he submitted, Mr. Kuhne complained in November and December of 2008 that he was going blind in his left eye but had not been to see another doctor.").

[42] *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In *Celotex*, the Supreme Court made clear that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Here, with the exception of the evidence discussed above, which is either not relevant or disputed, the Defendants have not done so.

13

## 2. *Mr. Parker*

We turn next to Mr. Parker, a nurse practitioner who twice examined Mr. Kuhne, once in late 2008 and again in early 2009.

The first examination occurred on December 13, 2008.  There, Mr. Parker indicated in his notes that Mr. Kuhne had "recent blurry vision," and wrote that "[patient] refused consult due to short EOS [stay in prison] time."[43]  In a deposition, Mr. Parker testified that he had spoken with Mr. Kuhne about the need for an eye consult, but that Mr. Kuhne had told him that "[h]e was going home really soon and would take care of it when he got out."[44]  Mr. Kuhne tells a different story.  His is that a defendant, who he believed was Mr. Parker, told him "that [he] could not see a doctor because [he] had less than six months to go on [his] sentence."[45]  In short, as our first decision held, whether Mr. Kuhne waived or was refused medical treatment in December 2008 remains disputed.[46]

---

[43] ECF No. 53-7, at *9.

[44] ECF No. 63-7, at *10.

[45] ECF No. 63-11, at *5.  Mr. Kuhne also includes an affidavit by his expert, Dr. Joseph Paris, which states that "[t]here is no question that Mr. Kuhne wanted to be treated for the problem as of December 13, 2008."  ECF No. 62-9, at *6.

[46] *See Kuhne*, 745 F.3d at 1097.  The defendants rely heavily on our unpublished decision in *Whitehead* v. *Burnside*, 403 F. App'x 401 (11th Cir. 2010), which concluded that "[s]elf-serving statements do not create a question of fact in the face of contradictory, contemporaneously created medical records."  *Id.* at 403.  Setting aside the fact that *Whitehead* is not controlling precedent, in this case, the records – Mr. Parker's notes – state only that Mr. Kuhne "refused consult due to short EOS time."  ECF No. 53-7, at *9.

14

This does not entirely end the issue, because Mr. Kuhne must demonstrate that had medical care been provided in mid-December, it would have made a difference in his eyesight. There is undisputed record evidence that had Mr. Kuhne been treated in November 2008 the outcome would have been different,[47] and there is equally undisputed evidence indicating that by early February, any treatment would not have made "any difference in outcome from that which he received subsequently."[48] December 13, 2008, fits comfortably within the range where medical treatment could have mattered. The Defendants do not suggest otherwise, and fail to discharge their burden of showing "that there is an absence of evidence to support the nonmoving party's case."[49]

Mr. Parker also saw Mr. Kuhne on February 21, 2009, and "did nothing to obtain eye care for [him]."[50] However, at this point, the only evidence in the summary judgment record is that any late-arriving treatment provided by this date

---

In this context, the word "refused" is ambiguous – it could either indicate that Mr. Kuhne decided to refuse medical care or that Mr. Parker refused him such care. The latter reading would be consistent with Mr. Kuhne's affidavit, and as such, we are not faced with a situation where there are necessarily contradictory records.

[47] *See Kuhne*, 745 F.3d at 1096.

[48] ECF No. 53-26, at *3.

[49] *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 325 (1986); *see also* Appellees' Br. 35.

[50] *Kuhne*, 745 F.3d at 1095-96.

15

would have made no difference in terms of outcome.[51]    Causation is a necessary

element of a deliberate indifference claim, and with such evidence unavailing,

summary judgment as to conduct stemming from this medical visit is appropriate.

### 3. *Ms. McIntosh*

Susan McIntosh, a correctional officer, worked at Mr. Kuhne's facility.    On

January 28, 2009, Mr. Kuhne filed an inmate request:

> I've had written you yesterday about my D.R. [Disciplinary Record] gain time.  I was told that you may be able to help me receive my 85% date and [might] be able to help me resolve my D.R. I do have medical proof for my illness if that helps.  Since June, I've been having problems with my eyes, slowly getting worse.  Medical has informed me, that I didn't have enough time to see a specialist.  I have gone Blind in left eye & half blind in right.  I have a Eye doctor in Tallahassee upon release to see me to review my problem.  Please Help – my sight is getting worse.[52]

Ms. McIntosh, who apparently had no interaction with Mr. Kuhne before receiving

that notice, responded:

> I don't really understand what I can help you with.  The only DR showing was in August 2008.  If you are asking for the gain time you were unable to earn due to the DR, there is nothing I can do about that.
>
>  As far as your eyesight, this is a medical issue, therefore I would be unable to assist you in that area either.[53]

---

[51] *See* ECF No. 53-26, at *3 ("It is my opinion that even if Dr. Lagares had approved a retinal specialty consult on February 4, 2009, there would not have been any difference in outcome from that which [Mr. Kuhne] received subsequently from Dr. Brooks.").

[52] ECF No. 62-8, at *2.

[53] *Id.*

16

Under our circuit's precedent, when a lay person is accused of deliberate indifference, the plaintiff must "present[] evidence that her situation was so obviously dire that two lay [officers] must have known that a medical professional had grossly misjudged [the plaintiff's] condition."[54]  In addition, the plaintiff must provide some evidence of the normal elements of deliberate indifference: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."[55]

The summary judgment record does not support the conclusion that Ms. McIntosh's conduct satisfies this standard.  The inmate request was framed in terms of getting information on Mr. Kuhne's release date, and Ms. McIntosh replied in kind.  The note referred to his deteriorating eyesight, but also stated that Mr. Kuhne had a doctor to see him "upon his release."  In that context, we conclude that a reasonable jury could not find that Ms. McIntosh knew that a medical professional had "grossly misjudged" Mr. Kuhne's condition.  Moreover, there is no evidence in the record that Ms. McIntosh had a subjective knowledge

---

[54] *Townsend* v. *Jefferson Cnty.*, 601 F.3d 1152, 1159 (11th Cir. 2010).  *Townsend* favorably cited *Spruill* v. *Gillis*, 372 F.3d 218, 236 (3d Cir. 2004), which held that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."

[55] *Easley* v. *Dep't of Corr.*, 590 F. App'x 860, 868 (11th Cir. 2014) (quoting *Townsend*, 601 F.3d at 1158) (brackets omitted).

that there was a risk of serious harm, or that she "actually dr[ew] that inference."[56]

Nor is there evidence that Ms. McIntosh's conduct was "more than gross negligence," indeed, Mr. Kuhne only alleges that it "was inappropriate."[57]  Without more, we affirm that summary judgment in favor of Ms. McIntosh was proper.

### 4. *Dr. Lagares*

Finally, we turn to Dr. Lagares, the Chief Health Officer for the prison.  Mr. Kuhne appears to make two distinct complaints about Dr. Lagares's conduct.  The first dates to October 2008.  Then, as we explained above, Mr. Kuhne's diagnosis of proliferative diabetic retinopathy came on October 21, and his doctor recommended that he be referred to a retinal specialist "ASAP."[58]  Dr. Lagares received and approved the referral request the next day, and the appointment, which "was made by someone in utilization management" was scheduled to occur on November 18, 2008.[59]  "According to Mr. Kuhne's medical expert, the consultation with the retinal specialist should have taken place within three to seven days of [October 21] the examination."[60]  Mr. Kuhne argues that by

---

[56] *Id.*

[57] ECF No. 64, at *13.

[58] *Kuhne* v. *Fla. Dept. of Corr.*, 745 F.3d 1091, 1093 (11th Cir. 2014).

[59] *Id.* at 1093 n.2.

[60] *Id.*

approving an appointment set nearly a month after his retinopathy was first diagnosed, Dr. Lagares unreasonably delayed the provision of necessary medical services, giving rise to a claim of deliberate indifference.[61]

We have held that "delayed treatment . . . may also give rise to constitutional claims."[62]  Whether delay is permissible "depend[s] on the nature of the medical need and the reason for the delay."[63]  It is not obvious that the delay in question is fully attributable to Dr. Lagares, or that it is constitutionally excessive.  We need not reach that question, however, as the Defendants present neither argument nor evidence suggesting that it is not.[64]  Given that they bear the burden at this stage of the proceedings, summary judgment cannot rest on this ground.[65]

The second complaint is of Dr. Lagares's conduct on February 4, 2009, when she denied Mr. Kuhne's medical grievance form.[66]  Here, want of causation

---

[61] *See, e.g.*, ECF No. 65, at *5, 7.

[62] *Farrow* v. *West*, 320 F.3d 1235, 1247 (11th Cir. 2003) (quoting *Harris* v. *Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994)) (bracket omitted).

[63] *Adams* v. *Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995).  How long is too long depends on factors such as the severity of the plaintiff's pain and the consequences of delay. *See, e.g.*, *McElligott* v. *Foley*, 182 F.3d 1248, 1258 (11th Cir. 1999).

[64] *See* Appellee's Br. 39-42.

[65] *See* Fed. R. Civ. P. 56(a) (requiring the movant to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[66] *See* ECF No. 53-3, at *12-13.

is fatal to Mr. Kuhne's claim.  The Defendants' expert opined that "even if Dr. Lagares had approved a retinal specialty consult on February 4, 2009, there would not have been any difference in outcome from that which he received subsequently."[67]  There is no contradictory evidence.  This encounter cannot be made the basis for liability.[68]

### III.

The Defendants also cross-appeal the district court's denial of their motion to modify its scheduling order to allow them to file a second summary judgment motion.  This challenge fails.

Federal Rule of Civil Procedure 16(b) requires the district court to issue a scheduling order, and provides that this order "may be modified only for good cause and with the judge's consent."[69]  We review a district court's ruling on scheduling orders for abuse of discretion and here find none.[70]  There is no general

---

[67] ECF No. 53-26, at *3.

[68] The Defendants also move for dismissal on the basis of qualified immunity as to all defendants.  We have held that where, as here, "the plaintiff has sufficiently alleged or shown a material dispute of fact as to an [Eighth Amendment] claim, summary judgment based on qualified immunity is not appropriate."  *Bowden* v. *Stokely*, 576 F. App'x 951, 955 (11th Cir. 2014).  The defendants can, of course, continue to pursue their qualified immunity claims at trial.

[69] Fed. R. Civ. P. 16(b)(4).

[70] *See, e.g.*, *Johnson* v. *Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001).

bar on subsequent summary judgment motions after remand.[71]  New briefing might well be required.   In this case, however, the Defendants' original summary judgment motion contained arguments that extended beyond the mere fact that Mr. Kuhne had originally signed a refusal form, and in their motion to modify the scheduling order, the Defendants do not point to any new evidence they would proffer or legal theories they would propose that would require new briefing.[72] Accordingly, we hold that the district court did not abuse its "broad discretion" in concluding that it could resolve the pending motions for summary judgment without modifying the scheduling order.[73]

## IV.

We AFFIRM the grant of summary judgment to Ms. McIntosh.   We REVERSE the grant of summary judgment to Ms. Williams and Ms. Bryson.  We AFFIRM IN PART AND REVERSE IN PART the grant of summary judgment to Mr. Parker and Dr. Lagares; reversing as to conduct occurring before February 2009 and affirming as to conduct occurring in or after February 2009.   We

---

[71] *See, e.g.*, *Newman* v. *Ormond*, 456 F. App'x 866, 867 (11th Cir. 2012).  Indeed, our first panel recognized that the district court would need to re-consider whether the plaintiff's claims could withstand summary judgment. *See Kuhne* v. *Fla. Dept. of Corr.*, 745 F.3d 1091, 1097 (11th Cir. 2014).

[72] *See* ECF No. 142.

[73] *Abdullah* v. *City of Jacksonville*, 242 F. App'x 661, 664 (11th Cir. 2007).

AFFIRM the order of the district court denying the motion to modify the scheduling order.  We REVERSE the order of the district court declining to exercise supplemental jurisdiction over the Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c)(3).[74]

We REMAND with orders that the case be reassigned and the remaining claims be set for trial.

---

[74] The district court declined to exercise supplemental jurisdiction over the plaintiff's state law medical malpractice claim pursuant to 28 U.S.C. § 1367(c)(3), which allows the district court to dismiss state-law claims if it has "dismissed all claims over which it has original jurisdiction."  Since, pursuant to our order, claims brought pursuant to 28 U.S.C. § 1331 remain and are yet at the pleading stage, that dismissal cannot be sustained.