[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10565
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-24567-RNS

CRAIG SALVANI,

Plaintiff - Appellant,

versus

CORIZON HEALTH, INC.,
MARTA CASTILLO, M.D., et al,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 18, 2021)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Craig Salvani appeals the district court's grant of summary judgment in

favor of Dr. Marta Castillo.[1]  Salvani argues that while he was in the custody of the

---

[1] Salvani appeals only the grant of summary judgment in favor of Castillo and has abandoned

Florida Department of Corrections, prison medical providers were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, Salvani says Castillo's failure to treat his infection in a timely manner resulted in the amputation of his legs. The district court granted summary judgment in favor of Castillo. In granting that judgment, the district court held that Salvani did not present with a serious medical need during the time he was at the prison where Castillo worked. After careful review, we reverse and remand.

## I.

For a brief period beginning on February 6, 2014, Salvani was a prisoner in the custody of the Florida Department of Corrections. Salvani had been incarcerated in a county jail, where he was involved in an altercation that injured his elbow and neck. During his intake screening at the South Florida Reception Center, Salvani reported these injuries and the medical center took blood and urine tests. The test results were available two days later and revealed several abnormalities. Specifically, the tests indicated that Salvani had a high white blood cell count, low hemoglobin, low hematocrit, low platelets, high neutrophils, high monocytes, and blood in his urine. That same day, Salvani again complained of neck and back pain and was seen by a nurse. Salvani had a fever of 100 degrees, but his vital signs were normal.

---

any claim against the other defendants originally sued.

2

Castillo reviewed Salvani's test results on February 11 and requested that his chart be pulled, but did nothing further at that time. She had no further involvement with Salvani's care again until February 17, when a nurse informed Castillo of Salvani's worsening symptoms. At this point, Salvani had been coughing up green mucus for three days, had an elevated pulse, and was suffering from night sweats, chest pain, chills, and dehydration. Castillo ordered a repeat urinalysis and an EKG. The urinalysis showed abnormal results similar to the February 6 tests and the EKG was abnormal for tachycardia. Castillo reviewed the EKG the same day and reviewed the urinalysis on February 19. She requested that his chart be pulled, but did not evaluate Salvani or take any further action.

The next day, Salvani was transferred to the Reception and Medical Center, a different entity within the Florida Department of Corrections. His medical records traveled with him but there was no instruction from Castillo regarding Salvani's unfolding medical situation or the need for further evaluation or testing. Salvani's condition worsened and he ultimately went into septic shock, which resulted in the amputation of both of his legs.

Salvani filed suit against Castillo under 42 U.S.C. § 1983, alleging that she was deliberately indifferent to his serious medical need in violation of the Eighth Amendment. Castillo moved for summary judgment, and the district court granted her motion. The court held that Salvani showed no serious medical need while at

3

the South Florida Reception Center, reasoning that his condition was not recognizable by a lay person until after he was transferred.  This is Salvani's appeal.

## II.

"We review de novo the district court's grant of summary judgment, considering all of the evidence in the light most favorable to the nonmoving party." Nesbitt v. Candler County, 945 F.3d 1355, 1357 (11th Cir. 2020).  Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id. (quotation marks omitted).

## III.

The Eighth Amendment protects a prisoner from "deliberate indifference to [his] serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976).  To demonstrate a violation of this right, a prisoner must establish "an objectively serious medical need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014) (quotation marks omitted) (alteration adopted).

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

4

recognize the necessity for a doctor's attention." Id. at 1096 (quotation marks omitted). However, "[i]n the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." Id. (quotation marks omitted). Where objectively unreasonable delay in the face of foreseeable symptoms resulting in a prisoner's "suffering a life-long handicap or permanent loss, the medical need is considered serious." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (quotation marks omitted), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002), as recognized in Patel v. Lanier County, 969 F.3d 1173 (11th Cir. 2020).

As set out above, the district court found that Castillo was entitled to summary judgment because Salvani had not presented a serious medical need. However, after careful review of the record, we conclude that there is a genuine issue of material fact as to whether Salvani's condition rose to the level of a serious medical need during his time at the South Florida Reception Center. Salvani's condition ultimately developed into sepsis and, as a result, he had to have both of his legs amputated. Amputation is clearly both a "permanent loss" and a "life-long handicap." See Hill, 40 F.3d at 1188 (quotation marks omitted). And Salvani has presented evidence creating a genuine issue of fact as to whether his septic shock and ultimate amputation was the result of delay in diagnosis and treatment caused by Castillo's inaction. See id. For example, Salvani presented the expert

5

testimony of Dr. Jason Chertoff and Dr. Donald Kern that directly ties Castillo's inaction to Salvani's worsening condition and resulting amputation. A reasonable jury could conclude that Salvani suffered from a serious medical need during the time he was under Castillo's care.

The district court decided Castillo's motion for summary judgment based on the nonexistence of serious medical need and did not decide whether Castillo's actions demonstrated deliberate indifference.[2] We decline to do so in the first instance and leave that determination to the district court on remand.

**REVERSED AND REMANDED.**

---

[2] The district court referenced deliberate indifference in a single sentence: "Even if Dr. Castillo is guilty of negligence, her actions do not rise to the level of deliberate indifference to a serious medical need." Without further analysis, we do not understand this sentence to constitute an alternative ground for granting Castillo's motion for summary judgment and further understand the court's decision to be based solely on its finding that Salvani did not present a serious medical need. Our view is consistent with how the parties have characterized the court's decision in their briefing on appeal.